UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK KRAWCZAK,                                    Case No. 14-11281

         Plaintiff,                                Nancy G. Edmunds
v.                                               United States District Judge

COMMISSIONER OF SOCIAL SECURITY,                 Stephanie Dawkins Davis
                                                 United States Magistrate Judge
         Defendant.
_____/

**REPORT AND RECOMMENDATION**
**RULE 41(B) AND DEFENDANT'S MOTION**
**FOR SUMMARY JUDGMENT (Dkt. 11)**

## I.     PROCEDURAL HISTORY

    A.     Proceedings in this Court

On March 28, 2014, plaintiff filed the instant suit seeking judicial review of

the Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1).  Pursuant

to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Nancy G.

Edmunds referred this matter to Magistrate Judge Michael Hluchaniuk for the

purpose of reviewing the Commissioner's decision denying plaintiff's claim for

benefits.  (Dkt. 3).  This matter was reassigned to the undersigned Magistrate

Judge on January 5, 2016, pursuant to administrative order.  (*See* Text-Only Order

dated January 5, 2016).  Plaintiff was initially represented by counsel in this

matter.  However, the matter was subsequently stayed and a three-judge panel of

1

this court determined that plaintiff's counsel was no longer permitted to represent him.  (Dkt. 14).  Counsel has since withdrawn.  (Dkt. 16).

After the withdrawal by counsel, the undersigned issued an order striking the previously filed motions for summary judgment (Dkt. 9, 11), and setting a new briefing schedule for the parties.  (Dkt. 18).  New counsel did not appear for plaintiff, who is now deemed to be proceeding in this matter *pro se*.  Plaintiff's motion for summary judgment was due on February 11, 2016.  The scheduling order specifically provided that "**PLAINTIFF'S FAILURE TO TIMELY FILE A MOTION FOR SUMMARY JUDGMENT WILL RESULT IN A RECOMMENDATION OF DISMISSAL.**"  (Dkt. 18) (emphasis in original). The deadline for plaintiff to file a motion for summary judgment has passed and he has neither filed a motion nor contacted the Court.  The Commissioner also failed to file a motion for summary judgment.

The undersigned issued a report and recommendation on February 26, 2016, recommending remand.  (Dkt. 19).  The Commissioner filed an objection (Dkt. 20) and Judge Edmunds recommitted the matter to the undersigned for further review and consideration of the evidence cited in the objections.  (Dkt. 21).

B.    Administrative Proceedings

Plaintiff filed the instant claim on June 10, 2011, alleging that he became

2

unable to work on March 15, 2011. (Dkt. 6-2, Pg ID 77). The claim was initially

disapproved by the Commissioner on October 11, 2011. *Id*. Plaintiff requested a

hearing and on December 19, 2012, plaintiff appeared via video before

Administrative Law Judge (ALJ) Brenton L. Rogozen, who considered the case *de*

*novo*. (Dkt. 6-2, Pg ID 92-141). In a decision dated January 9, 2013, the ALJ

found that plaintiff was not disabled. (Dkt. 6-2, Pg ID 77-88). Plaintiff requested

a review of this decision on January 18, 2013. (Dkt. 6-2, Pg ID 40-41). The

ALJ's decision became the final decision of the Commissioner on January 31,

2014, when the Appeals Council denied plaintiff's request for review. (Dkt. 6-2,

Pg ID 26-32); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir.

2004).

This matter is now ready for report and recommendation. The Court

concludes that substantial evidence supports the decision of the Administrative

Law Judge. The Court therefore **RECOMMENDS** that the findings of the

Commissioner of Social Security be **AFFIRMED** or, in the alternative, that

plaintiff's complaint be **DISMISSED WITHOUT PREJUDICE** pursuant to

Fed.R.Civ.P. 41(b).

## II.    FACTUAL AND PROCEDURAL BACKGROUND

At the time he claims to have become disabled, plaintiff had been working

3

as a corrections officer for the Michigan Department of Corrections for
approximately 11 years.  Plaintiff suffered an on-the-job back injury a few years
before he claimed disability.  Plaintiff also suffers from a variety of impairments,
including lumbar disc disease, carpal tunnel syndrome, Tourette's, obstructive
sleep apnea, and depression.  Plaintiff was born in 1969 and was 41 years of age
on the alleged disability onset date.  (Dkt. 6-2, Pg ID 87).  Plaintiff's last date
insured is December 31, 2016.  *Id*. at 79.

At step one of the sequential evaluation process, the ALJ found that plaintiff
had engaged in substantial gainful activity from March 1, 2012, through
September 30, 2012, but did not engage in substantial gainful activity from
October 1, 2012, through the date of his decision.  *Id*. at 79-81.  At step two, the
ALJ found that from his alleged onset date through February 28, 2012,[1] plaintiff
did not have an impairment that limited his ability to perform basic work-related
activities for twelve consecutive months.  *Id*. at 80.  The ALJ found that as of
October 1, 2012, plaintiff had the following severe impairments: degenerative disc
disease of the lumbar spine, with radiculopathy on the left.  *Id*. at 81.  At step
three, the ALJ found that plaintiff did not have an impairment or combination of

---

[1]  The ALJ's decision actually says February 28, 2011, but this appears to be a
typographical error.  In that discussion, the ALJ concludes that plaintiff did not have any severe
impairments lasting 12 consecutive months prior to his return to work in February, 2012.  (Dkt.
6-2, Pg ID 80).

impairments that met or medically equaled the severity of any Listed Impairment. *Id.* at 84. Before proceeding to step four, the ALJ determined that, as of October 1, 2012, plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b). *Id.* At step four, the ALJ found that plaintiff was unable to perform any of his past relevant work as a corrections officer or an armed car guard, which were both medium exertion occupations. *Id.* at 87. At step five, the ALJ relied on the Medical-Vocational Guidelines ("the grids"), 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 202.21, in determining that plaintiff was "not disabled." *Id.* at 88.

## II. DISCUSSION

### A.   Standard of Review

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v.*

*McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing *Mullen*, 800 F.2d at 545.

B.    <u>Merits of Plaintiff's Claims</u>

The undersigned recommends that the court affirm the ALJ's findings of fact and conclusions of law.  The undersigned has reviewed the record evidence, the Commissioner's motion for summary judgment, and the ALJ's decision.[2]  The analysis which follows focuses on the points at which the ALJ made conclusions adverse to an ultimate finding of disability, and the undersigned concludes that substantial evidence supports the ALJ's conclusions as they relate to the weighing of the medical opinions in the record, the step five determination, and plaintiff's credibility.

The first step at which the ALJ's findings diverge from the path leading to a finding of disability in plaintiff's case is at step one, where the ALJ concluded that plaintiff engaged in substantial gainful activity for the period from March 1, 2012, through September 30, 2012, but did not engage in substantial gainful activity from October 1, 2012, through the date of his decision.  Plaintiff's own testimony

---

[2]   A review of the merits of plaintiff's case in the absence of a motion for summary judgment from plaintiff is supported by *Wright v. Comm'r of Soc. Sec.*, 2010 WL 5420990, at *3 (E.D. Mich. Dec. 27, 2010), in which the court held that dismissal for failure to file a motion for summary judgment is unwarranted because the plaintiff has "no burden to do anything in order to obtain judicial review of the administrative decision except file a timely complaint." Other judges in this district have concluded, however, that dismissal of Social Security complaints pursuant to Fed.R.Civ.P. 41(b) is appropriate.  *See Salmo v. Comm'r of Soc. Sec.*, 2012 WL 6929176, at *2 (E.D. Mich. Nov. 27, 2012) (collecting cases dismissing Social Security complaints under Rule 41(b)); *see also Brinkley v. Comm'r of Soc. Sec.*, 2015 WL 1637598 (E.D. Mich. Apr. 13, 2015) (Michelson, J.).

7

confirmed his earnings for full-time work from March 2012 through September

2012.  (Dkt. 6-2, Pg ID 79-80; 101-102).  Thus, the ALJ's decision is firmly

supported by substantial evidence.

At step two, the ALJ determined that from his alleged onset date through

February 28, 2012,[3] the date plaintiff returned to work, plaintiff did not have an

impairment that limited his ability to perform basic work-related activities for

twelve consecutive months.  *Id*. at 80.  The ALJ found that as of October 1, 2012,

plaintiff had the following severe impairments: degenerative disc disease of the

lumbar spine, with radiculopathy on the left.  *Id*. at 81.  Again, because plaintiff

admittedly worked full-time from February 2012 through September 2012, the

ALJ's conclusion is clearly supported by substantial evidence.

At step two, the ALJ also found that certain of plaintiff's impairments –

carpal tunnel syndrome, Tourette's, obstructive sleep apnea, and depression –

were non-severe.  As to plaintiff's claimed mental impairments, the ALJ weighed

the medical opinions in the record.  Dr. Alfred Jonas, an expert consultant who

testified at the hearing, opined that plaintiff had mild limitations in social

functioning, that there was not sufficient evidence in the record to determine

whether plaintiff suffered from any limitation in the activities of daily living or

---

[3] *See* note 1.

8

any impairment in concentration, persistence, or pace, that plaintiff had not suffered any episodes of decompensation, and that the GAF scores in the record were not supported, given that plaintiff worked for seven months and the medical evidence was not supportive. (Dkt. 6-2, Pg ID 82). Dr. Jonas also testified that plaintiff's alcohol dependence was not material because the medical record did not show any consequences from his alcohol use. *Id*. Dr. Nagarkar, plaintiff's treating psychiatrist, assigned a GAF score of 60 on December 1, 2011, indicating moderate difficulties in social or occupational functioning. *Id*. Dr. Mark Zaroff, a state agency consultant, performed a psychiatric examination on October 6, 2011, concluding that plaintiff's attention and concentration were fairly limited on a sustained basis, but he did well with brief tasks. Dr. Zaroff found that plaintiff's irritability and difficulty with pain would affect his daily functioning, along with his heavy alcohol use. *Id.* Dr. Zaroff assigned a GAF score of 45, indicating a serious impairment in social or occupational functioning. Dr. Joe DeLoach, a state agency consultant, opined on October 7, 2011 that plaintiff had a mild limitation in his activities of daily living and a moderate limitation in concentration, persistence or pace, along with limitations in sustained concentration, persistence, and social interaction. *Id*.

The ALJ concluded that Dr. Jonas' opinion was the most persuasive because he reviewed plaintiff's entire medical record, listened to plaintiff testify, and

provided a detailed explanation for his opinions, with references to the record evidence. *Id*. at 83. The ALJ gave reduced weight to the GAF scores because they were undermined by plaintiff's ability to work and by the medical record. The ALJ also gave reduced weight to the opinions of Dr. Zaroff and Dr. DeLoach because Dr. DeLoach's opinion was based on Dr. Zaroff's examination and evaluation, and Dr. Zaroff's opinion appears to be primarily based on plaintiff's subjective complaints. In addition, the ALJ points out that Dr. Zaroff did not conduct any psychological testing. Finally, the ALJ opined that Dr. Jonas' opinion was most consistent with the medical evidence as a whole. The ALJ pointed to Dr. Zaroff's examination where plaintiff was described as cooperative, attentive, and calm, his thoughts were logical, organized and goal-directed, his speech was not pressured or circumstantial, and his memory, knowledge, calculations, abstract thinking and judgment were unremarkable. *Id*. at 83. Additionally, Dr. Nagarkar's (plaintiff's treating psychiatrist) mental status examinations in April and July 2012 were within normal limits. *Id*. After considering the four broad functional areas set forth in the regulations in conjunction with the medical and other evidence of record, the ALJ concluded that his mental impairment was nonsevere. *Id*. at 83-84. Based on the considerations set forth above, the undersigned concludes that the ALJ's determination is supported by substantial evidence.

As to his carpal tunnel syndrome, the ALJ relied on Dr. Jonas' testimony that there were no physical findings on examination in the record of any limitations relating to plaintiff's condition. *Id*. at 81. Indeed, Dr. Jonas testified that plaintiff's carpal tunnel syndrome would cause no exertional limitations or restrictions. (Dkt. 6-2, Pg ID 111). There does not appear to be any evidence in the record or any opinion by a physician that plaintiff's carpal tunnel caused any limitations. Thus, the ALJ's determination that plaintiff's carpal tunnel syndrome is nonsevere is supported by substantial evidence.

Likewise, the ALJ concluded that there was no evidence in the record showing that plaintiff's Tourette's or sleep apnea more than minimally affected his ability to work. *Id*. at 81. The ALJ pointed out that plaintiff told Dr. Zaroff that he slept with a CPAP machine and reported to Dr. Awerbuch (plaintiff's treating physician) that it was helpful. *Id*. There does not appear to be any evidence in the record or any opinion by a physician that plaintiff's sleep apnea caused any limitations. As to his Tourette's, Dr. Jonas testified that it was not likely that plaintiff's disorder would cause him any limitations in performing basic work activities because in most professional settings, he would not be faced with the problems he had while working in a correctional facility.[4] *Id*. at 81. There does

---

[4] Plaintiff was taunted by inmates, which caused him to repeat things that were not appropriate in the work place. (Dkt. 6-2, Pg ID 106-107).

not appear to be any evidence in the record or any opinion by a physician that plaintiff's Tourette's syndrome caused any limitations. Thus, the ALJ's determination that plaintiff's sleep apnea and Tourette's syndrome are nonsevere is supported by substantial evidence.

At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listed Impairment. *Id*. at 84. The ALJ's listing analysis was not set forth in great detail. However, while the ALJ's listing analysis was limited, the undersigned concludes that any articulation error was harmless. Under the theory of presumptive disability, a claimant is eligible for benefits if he has an impairment that meets or medically equals a Listed Impairment. *See Christephore v. Comm'r of Soc. Sec*., 2012 WL 2274328, at *6 (E.D. Mich. June 18, 2012). When considering presumptive disability at step three, "an ALJ must analyze the claimant's impairments in relation to the Listed Impairments and must give a reasoned explanation of his findings and conclusions in order to facilitate meaningful review." *Id*. (citing *Reynolds v. Comm'r of Soc. Sec.*, 424 Fed. Appx. 411, 416 (6th Cir. 2011)). An ALJ's failure to sufficiently articulate his step three findings is error. *See M.G. v. Comm'r of Soc. Sec*., 861 F. Supp.2d 846, 858-59 (E.D. Mich. 2012). "For a claimant to show that his impairment matches a listing, it must meet *all* of the specific medical criteria." *Sullivan v. Zebely*, 493 U.S. 521,

12

530 (1990) (emphasis in original).

The court, however, will not overturn an ALJ's decision if the failure to articulate Step Three findings was harmless. *See M.G.*, 861 F. Supp. 2d at 859. Such an error is harmless where "concrete factual and medical evidence is apparent in the record and shows that even if the ALJ had made the required findings, the ALJ would have found the claimant not disabled...." *Id.* at 861 (citation omitted, emphasis in original). This is because the Sixth Circuit "has consistently rejected a heightened articulation standard, noting ... that the ALJ is under no obligation to spell out 'every consideration that went into the step three determination' or 'the weight he gave each factor in his step three analysis,' or to discuss every single impairment." *Andrews*, 2013 WL 2200393, at *12 (citing *Staggs v. Astrue*, 2011 WL 3444014, at *3 (M.D. Tenn. Aug. 8, 2011) (citation omitted)). As the *Staggs* court further stated, "[n]or is the procedure so legalistic that the requisite explanation and support must be located entirely within the section of the ALJ's decision devoted specifically to step three; the court in *Bledsoe* implicitly endorsed the practice of searching the ALJ's entire decision for statements supporting his step three analysis." *Staggs*, 2011 WL 3444014, at *3 (citing *Bledsoe v. Barnhart*, 165 Fed. Appx. 408, 411 (6th Cir. 2006)). Thus, remand is not required where the evidence makes clear that even if the ALJ "had made the required findings, [he] would have found the claimant not disabled."

13

*M.G.*, 861 F. Supp. 2d at 861. Conversely, remand is appropriate in cases where the court's review of the ALJ's decision and the record evidence leaves open the possibility that a listing is met. *See Reynolds*, 424 Fed. Appx. at 416 ("in this case, correction of such an error is not merely a formalistic matter of procedure, for it is possible that the evidence [the plaintiff] put forth could meet this listing").

This case is very similar to that presented in *Gower v. Comm'r of Soc. Sec.*, 2015 WL 163830, *28 (E.D. Mich. 2015). In that case, the court concluded that the ALJ's failure to conduct an in depth Listing analysis was not an error. First, the court pointed out that an ALJ does not have to cite to every piece of evidence to show she considered it, or arrange the decision in a particular manner to show she analyzed the evidence. *Id*., citing *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004). And, the ALJ clearly considered the entire medical record, pointing to physician's conclusions that the plaintiff did not meet any listing. Ultimately, the court concluded that error was harmless because the evidence for meeting or equaling the listing was not in the record. *Gower*, at *29, citing *Berryhill v. Shalala*, 4 F.3d 993, 1993 WL 361792, at *7 (1993) (noting that harmless error applied where the mistake did not affect the procedure or substance of the decision, and where the court was not " 'in substantial doubt whether the administrative agency would have made the same ultimate finding with the erroneous finding removed from the picture ....' " (quoting *Kurzon v. United States*

14

*Postal Serv.*, 539 F.2d 788, 796 (1st Cir. 1976))).  Here, just as in *Gower*, the ALJ

discussed all the medical evidence of record and "[a]ny further discussion would

simply expound upon the absence of evidence.").

The undersigned also agrees with the Commissioner's argument set forth in

the objection to the first report and recommendation that plaintiff has failed to

meet his burden of establishing that the evidence shows he meets or equals a

listing.  As the Commissioner points out, plaintiff has not argued that he met any

particular Listing (either at hearing, when he was represented by counsel, or by

filing a brief in this matter).  And, because plaintiff has not presented any

argument or evidence describing how the ALJ could justifiably have found

equivalence on the record, remand is not warranted.  *See Shinseki v. Sanders*, 556

U.S. 396, 410 (2009) ("[I]t normally makes sense to ask the party seeking reversal

to provide an explanation, say, by marshaling the facts and evidence showing the

contrary.").  Thus, for these reasons, the undersigned finds no error at Step Three.

Next, the undersigned finds that the ALJ's RFC findings are also supported

by substantial evidence.  The ALJ determined that plaintiff had the RFC to

perform light work, despite his degenerative disc disease with lumbar

radiculopathy on the left.  (Dkt. 6-2, Pg ID 87).  The ALJ gave reduced weight to

the opinions of Dr. Awerbuch, plaintiff's treating physician.  Dr. Awerbuch

limited plaintiff to less than sedentary work.  However, the ALJ found that this

opinion was not supported by the medical evidence. Notwithstanding the same, given that plaintiff regularly sought treatment for his back pain, the ALJ determined his capacity for work was reduced to light work. The ALJ pointed out that his treatment was conservative and the diagnostic studies only showed mild findings of degenerative changes. The ALJ acknowledged the positive straight leg raise on the left, reduced range of motion in the lumbar spine, palpable spasms, and trouble squatting, but also pointed out that plaintiff declined recommended treatment options, returned to work for a seven month period, and continued to participate in a variety of activities of daily living, including grocery shopping, fishing, duck hunting. *Id*. at 85, 87. Thus, despite Dr. Awerbuch's opinions, the ALJ found that plaintiff could perform light work given the evidence. *Id*. at 87. The ALJ also gave plaintiff's treating physician, Dr. Laclair's opinions no weight because they were issued during a period when plaintiff's impairments did not last at a severe level for twelve continuous months, because plaintiff had returned to work. *Id*. The undersigned concludes that the ALJ properly weighed these opinions and his conclusions regarding them are supported by substantial evidence.

Although the ALJ did not discuss Dr. Jonas' opinions specifically in the portion of the decision regarding plaintiff's physical limitations, his opinions are supportive of the ALJ's conclusions and provide substantial evidence for the

16

ALJ's RFC.  It is also clear from the opinion as a whole that the ALJ specifically relied on Dr. Jonas' conclusions in this his discussion of plaintiff's back-related impairments, in the weighing of the opinions of plaintiff's treating physicians, and in formulating the RFC.  Specifically, Dr. Jonas reviewed the medical evidence of record and testified that plaintiff suffered from a back impairment, as demonstrated by an MRI and EMG.  (Dkt. 6-2, Pg ID 103-104; 109-110; Dkt. 6-7, Pg ID 233, 280-281).  He acknowledged medical records confirming that plaintiff had some back pain and radicular symptoms, but noted that plaintiff elected to receive only conservative treatment.  (Dkt. 6-2, Pg ID 110; Dkt. 6-7, Pg ID 323-324).  Dr. Jonas explicitly considered that plaintiff's primary care physician, Dr. Awerbuch, opined that plaintiff's restrictions rendered him incapable of even sedentary work  and ultimately concluded that Dr. Awerbuch's opinion was not supported by the record.  (Dkt. 6-2, Pg ID 110-111).  Based on his review of the record, Dr. Jonas opined that plaintiff was physically limited to "something like a light exertional level," with no heavy lifting and especially no carrying/turning while lifting heavy objects.  *Id*. at 111.

In the view of the undersigned, the ALJ properly weighed the opinions of the treating and consulting physicians and considered the whole of the medical and other evidence in formulating the RFC.  Thus, the undersigned finds that substantial evidence supports the RFC.

17

With respect to the Step Five findings, the ALJ concluded that considering the plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that plaintiff can perform. (Dkt. 6-2, Pg ID 88). To meet her burden at step five, the Commissioner must make a finding "'supported by substantial evidence that [Plaintiff] has the vocational qualifications to perform specific jobs.'" *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (quoting *O'Banner v. Sec'y of Health, Educ. & Welfare*, 587 F.2d 321, 323 (6th Cir. 1978)). Based on an RFC for a full range of light work, and considering plaintiff's age, education, and work experience, the ALJ concluded that a finding of "not disabled" was directed by Medical Vocational Rule 202.21. (Dkt. 6-2, Pg ID 88).

Where the claimant suffers from an impairment limiting only his strength, the Commissioner can satisfy her burden at step five, without considering direct evidence of the availability of jobs the particular claimant can perform, through reference to the grid. *Abbott v. Sullivan*, 905 F.2d 918, 926 (1990). The grid aids the Commissioner in determining disability claims by allowing "administrative notice" to be taken of the existence of jobs in the national economy that those with particular combinations of the four statutory factors are capable of performing. *Id*. at 926, citing *Kirk v. Secretary of Health & Human Services*, 667 F.2d 524, 529 (6th Cir. 1981). The grid is composed of rules, numbered 201.01 through 203.31,

18

each of which specifies whether a claimant with a particular combination of the four factors listed in the Act, 42 U.S.C. §§ 423(d)(2)(B) and 1382c(a)(3)(B), will be found disabled or not disabled. *Id*. Here, given that the ALJ's conclusion that plaintiff could perform a full range of light work is supported by substantial evidence, the ALJ properly applied Rule 202.21.

Finally, to the extent there is a question of whether the ALJ correctly assessed plaintiff's credibility, the undersigned notes that "[i]t is for the [Commissioner] and his examiner, as the fact finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) (quoting *Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972)). As the Sixth Circuit has held, determinations of credibility related to subjective complaints of pain rest with the ALJ because "the ALJ's opportunity to observe the demeanor of the claimant 'is invaluable, and should not be discarded lightly.'" *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981) (citation omitted). Thus, an ALJ's credibility determination will not be disturbed "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).

Here, the undersigned agrees with the Commissioner that the ALJ's conclusions regarding plaintiff's credibility are supported by substantial evidence. While the ALJ acknowledged that plaintiff suffered from medically determinable

19

impairments, the ALJ determined that the objective medical evidence did not support the severity of plaintiff's claims.  (Dkt. 6-2, Pg ID 86) (20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4) (in evaluating statements about pain or other symptoms, the ALJ will consider any inconsistencies in the evidence); Social Security Ruling (SSR) 96-7p, 1996 WL 374186, at *5 (July 2, 2006) (stating that one strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record). Specifically, the ALJ concluded that plaintiff's daily activities – which included preparing simple meals, caring for his young children, performing some household chores including mowing the lawn, driving, shopping for groceries, fishing, socializing, paying bills, duck hunting – were not as limited as one would expect, given the complaints of symptoms and limitations.  (Dkt. 6-2, Pg ID 86).  The ALJ also pointed out that plaintiff declined recommended treatment options and reported that pain medications were relatively effective.  *Id*. The undersigned concludes that there is no compelling reason to disturb the ALJ's credibility analysis here.

    C.   <u>Rule 41(b) Dismissal</u>

    Alternatively, the undersigned recommends that plaintiff's complaint be dismissed for failure to prosecute.  "The authority of a federal trial court to dismiss a plaintiff's action with prejudice because of his failure to prosecute cannot

seriously be doubted." *Link v. Wabash R. Co.*, 370 U.S. 626, 629 (1962). "The

power to invoke this sanction is necessary in order to prevent undue delays in the

disposition of pending cases and to avoid congestion in the calendars of the

District Courts." *Link*, 370 U.S. at 629-630. "[D]istrict courts possess broad

discretion to sanction parties for failing to comply with procedural requirements."

*Tetro v. Elliott Popham Pontiac*, *Oldsmobile*, *Buick*, *and GMC Trucks*, *Inc.*, 173

F.3d 988, 991 (6th Cir. 1999), citing, *Carver v. Bunch*, 946 F.2d 451, 453 (6th

Cir.1991). Further, "a district court can dismiss an action for noncompliance with

a local rule ... if the behavior of the noncomplying party rises to the level of a

failure to prosecute under Rule 41(b) of the Federal Rules of Civil Procedure."

*Tetro*, 173 F.3d at 992.

Federal Rule of Civil Procedure 41 governs dismissals. As to involuntary

dismissals, it provides:

> If the plaintiff fails to prosecute or to comply with these
> rules or a court order, a defendant may move to dismiss
> the action or any claim against it. Unless the dismissal
> order states otherwise, a dismissal under this subdivision
> (b) and any dismissal not under this rule - except one for
> lack of jurisdiction, improper venue, or failure to join a
> party under Rule 19 - operates as an adjudication on the
> merits.

Fed.R.Civ.P. 41(b). "Neither the permissive language of [Rule 41(b)] – which

merely authorizes a motion by the defendant – nor its policy requires us to

conclude that it was the purpose of the Rule to abrogate the power of courts,

acting on their own initiative, to clear their calendars of cases that have remained

dormant because of the inaction or dilatoriness of the parties seeking relief." *Link*

*v. Wabash R. Co.*, 370 U.S. 626, 630 (1962). "The authority of a federal trial court

to dismiss a plaintiff's action with prejudice because of his failure to prosecute

cannot seriously be doubted." *Link*, 370 U.S. at 629; *see also Carter v. City of*

*Memphis, Tenn.*, 636 F.2d 159, 161 (6th Cir. 1980) ("It is clear that the district

court does have the power under [Fed.R.Civ.P. 41(b)] to enter a *sua sponte* order

of dismissal.") (citing *Link*). Moreover, "district courts possess broad discretion to

sanction parties for failing to comply with procedural requirements." *Tetro v.*

*Elliott Popham Pontiac, Oldsmobile, Buick, and GMC Trucks, Inc.*, 173 F.3d 988,

991 (6th Cir. 1999), citing  *Carver v. Bunch*, 946 F.2d 451, 453 (6th Cir. 1991).

And, "a district court can dismiss an action for noncompliance with a local rule

only if the behavior of the noncomplying party rises to the level of a failure to

prosecute under Rule 41(b) of the Federal Rules of Civil Procedure." *Tetro*, 173

F.3d at 992.

The Sixth Circuit considers "four factors in reviewing the decision of a

district court to dismiss a case for failure to prosecute:

> (1) whether the party's failure is due to willfulness, bad
> faith, or fault; (2) whether the adversary was prejudiced
> by the dismissed party's conduct; (3) whether the

22

> dismissed party was warned that failure to cooperate
> could lead to dismissal; and (4) whether less drastic
> sanctions were imposed or considered before dismissal
> was ordered.

*Wu v. T.W. Wang, Inc.*, 420 F.3d 641, 643 (6th Cir. 2005), citing *Knoll v. American Tel. & Tel. Co.*, 176 F.3d 359, 363 (6th Cir. 1999). In this case, the court warned plaintiff that his case would be dismissed if he failed to file his motion for summary judgment. (Dkt. 18). Thus, this factor weighs in favor of dismissal. With respect to the first factor, just as in *White v. Bouchard*, 2008 WL 2216281, *5 (E.D. Mich. 2008), "it is not clear whether plaintiff's failure to prosecute is due to willfulness, bad faith or fault." *Id*. Regardless, "defendant[] cannot be expected to defend an action," that plaintiff has "apparently abandoned, not to mention the investment of time and resources expended to defend this case." *Id*. Thus, the first and third factors weigh in favor of dismissal. Finally, given plaintiff's failure to substantively participate in this case since the withdrawal of his attorney, the undersigned sees no utility in considering or imposing lesser sanctions. Thus, the undersigned concludes that none of the factors weigh against dismissal for failure to prosecute.

It is true that "district courts should be especially hesitant to dismiss for procedural deficiencies where, as here, the failure is by a *pro se* litigant." *White*, at *8, quoting, *Lucas v. Miles*, 84 F.3d 532, 535 (2d Cir. 1996). Moreover, a *sua*

*sponte* dismissal may be justified by a plaintiff's "apparent abandonment of [a] case." *White*, at *5, citing *Washington v. Walker*, 734 F.2d 1237, 1240 (7th Cir. 1984). While the undersigned is sympathetic to plaintiff's situation, he failed to file an initial brief, as ordered. Under the circumstances, in the view of the undersigned, dismissal without prejudice is appropriate alternative disposition.

## IV.   RECOMMENDATION

For the reasons set forth above, the Court concludes that substantial evidence supports the decision of the Administrative Law Judge. The Court therefore **RECOMMENDS** that the findings of the Commissioner of Social Security be **AFFIRMED** or, in the alternative, that plaintiff's complaint be **DISMISSED WITHOUT PREJUDICE** pursuant to Fed.R.Civ.P. 41(b).

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health*

24

*and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: June 13, 2016                              s/Stephanie Dawkins Davis
                                                 Stephanie Dawkins Davis
                                                 United States Magistrate Judge

25

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on <u>June 13, 2016</u>, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record and that I have mailed by United States Postal Service to the following non-ECF participant: <u>Mark Krawczak, 6909 Wallace Drive, Saginaw, MI 48609.</u>

<u>s/Tammy Hallwood</u>
Case Manager
(810) 341-7887
tammy_hallwood@mied.uscourts.gov

26